## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RONALD E. HUFFMAN, Trustee of the** | ) | |
| **Ronald E. Huffman Revocable Living Trust,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-CV-702-TCK-PJC** |
| | ) | |
| **LEE COHEN, an individual; GORDONA** | ) | |
| **DUCA, INC., an Oklahoma corporation;** | ) | |
| **COLDWELL BANKER RADERGROUP,** | ) | |
| **an Oklahoma corporation; SITTON** | ) | |
| **PROPERTIES, L.L.C., a Missouri Limited** | ) | |
| **Liability Company; MIKE SITTON, an** | ) | |
| **individual; and WILLIAM F. RICHERT,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendant Coldwell Banker Radergroup's ("CBR") motion for attorney fees (Doc. 128) and Defendants Sitton Properties, LLC ("Sitton Properties"), Mike Sitton ("Sitton"), and William Richert's ("Richert") motion for attorney fees (Doc. 123).

## I.    Factual Background[1]

The Court held a jury trial on this matter from June 23 - 29, 2009.  Defendant CBR was represented by Lawrence Taylor.  Defendants Lee Cohen ("Cohen"), Sitton Properties, Sitton, and Richert were represented by Jones, Gotcher, & Bogan ("Jones Firm").  At the conclusion of Plaintiff Ronald Huffman's ("Huffman") evidence, the Court granted motions for judgment as a matter of law asserted by CBR, Sitton, Sitton Properties, and Richert pursuant to Federal Rule of Civil Procedure 50(a)(1)(A).  The Court denied Cohen and Defendant Gordona Duca, Inc.'s ("Gordona

---

[1]   For a more complete factual background, see *Huffman v. Cohen*, No. 07-CV-702, 2009 WL 1227648, at ** 1-6 (N.D. Okla. April 29, 2009), which is incorporated herein by reference.

Duca") motions for judgment as a matter of law.  Before Huffman's claims against Cohen and Gordona Duca were submitted to a jury, Huffman settled his claims against Cohen and Gordona Duca.  Accordingly, the jury did not deliberate or return a verdict.  On July 14, 2009, the Court entered Judgment against Huffman and in favor of CBR, Sitton, Sitton Properties, and Richert.  On July 28, 2009, these Defendants filed the motions for attorney fees currently pending.

## II.     Sitton Properties, Sitton, and Richert's Motion for Attorney Fees

Cohen, Sitton, and Richert agreed to split the Jones Firm's attorney fees three ways. Therefore, Sitton Properties and Sitton seek one-third of the total attorney fees expended by the Jones Firm, which is $55,801.76.   Richert also seeks $55,801.76, for a total award to these Defendants in the amount of $111,603.52. Sitton Properties, Sitton, and Richert (collectively "Sitton Defendants") assert that they are entitled to an award of attorney fees based on ¶ 15.11 of the Agreement for the Exchange of Real Estate ("Exchange Agreement").  Paragraph 15.11 provides:

> Should either party employ attorneys *to interpret or enforce* any of the provisions hereof, the party against whom any final judgment is entered agrees to pay the prevailing party all reasonable costs, charges, and expenses, including attorney's fees, expended or incurred in connection therewith.

(Exchange Agreement, Ex. A to Sitton's Mot. for Atty. Fees.)  Huffman argues that this provision does not apply because the Jones Firm was not employed "to interpret or enforce" the Exchange Agreement.  Huffman also argues that this provision does not authorize a fee award in favor of Sitton or Richert because they are not parties to the agreement.  For reasons explained below, the Court finds that ¶ 15.11 does not apply and fails to reach Huffman's second argument.

2

Sitton Defendants were sued only for fraud.[2]  The Court denied the Sitton Defendants' motion for summary judgment on the fraud claim based on *Wright v. Cies*, 648 P.2d 51 (Okla. Civ. App. 1982), in which sellers sued their listing realtor, two of his agents, and buyers for fraudulent representations as to the value of the real estate.  This Court reasoned:

> Although the facts do not precisely align with those presented in *Wright*, Huffman's version of events, if believed by a jury, is close enough to the facts presented in *Wright* to preclude a grant of summary judgment in favor of the Sitton Defendants. Huffman has presented sufficient evidence that a reasonable jury could conclude that Sitton, Richert, and Cohen acted in concert to induce Huffman to enter the Exchange Agreement, knowing or having reason to know that the values set forth in the Exchange Agreement were substantially overstated.  Specifically, there is evidence that Sitton purchased the properties shortly before the Exchange Agreement was executed for significantly lower prices, that Richert was to earn a commission from the exchange, and that Cohen had or developed a relationship with Sitton such that Sitton listed the Sapulpa Tract with him following the closing of the Exchange Agreement.  Although the evidence is entirely circumstantial, and a jury may believe that neither Sitton nor Richert conspired with Cohen to deceive Huffman in any way, this is for a jury to decide.  Like the court in *Wright*, this Court concludes that "fact finders will have to determine whether the defendants jointly or severally took unfair advantage" of Huffman "using the trust confided" in Cohen "as the medium to achieve the unlawful objective, or, to put it differently, whether each defendant knowingly became a participant in a scheme to defraud" Huffman.  *See Wright*, 648 P.2d at 54.

*Huffman*, 2009 WL 1227648, at * 19.

However, at the close of Huffman's evidence, Huffman had presented no direct or circumstantial evidence that Cohen and Richert had any relationship other than being professional acquaintances.  There was no evidence of a personal relationship or friendship between them, such as that presented in *Wright*, which would have supported an inference of a conspiracy scheme between two commercial realtors to defraud Huffman.  Similarly, there was no evidence that Cohen

---

[2] Defendants Cohen, Gordona Duca, and CBR were sued for breach of contract, negligence, fraud, breach of statutory duty, and breach of fiduciary duty.

and Sitton had any relationship whatsoever.  The evidence was undisputed that Cohen and Sitton met for the first time at the closing of the Exchange Agreement.  At the summary judgment stage, the Court found significant that Sitton listed the property with Cohen immediately following the Exchange Agreement.  However, the undisputed testimony at trial was that Richert suggested to Sitton that Cohen be involved in listing the property because Richert desired Cohen's assistance in selling the property.  The evidence simply did not support an inference that Cohen became involved in the second sale based on a prior relationship with Sitton or an overall conspiracy to defraud Huffman.  Therefore, the Court found the trial evidence distinguishable from the evidence at issue in *Wright*, found that Huffman presented insufficient evidence to proceed against these Defendants based on his theory of "conspiracy to defraud," and granted these Defendants' Rule 50(a) motions.

Sitton Defendants now contend that they are entitled to attorney fees because they were employed to interpret or enforce the Exchange Agreement, and the Court entered judgment in their favor.  Specifically, Defendants argue that their defense "was that parties in the contract stipulated to the values placed on the subject property" and Huffman was therefore barred from asserting his claim.  (Sitton Defs.' Mot. for Atty. Fees 3.)  According to Defendants, "the heart of [Huffman's] fraud claim was the alleged misrepresentation of values stated in paragraph 6 of the [Exchange Agreement], and Defendants [sic] defense of this claim was an attempt to enforce paragraph 6 of the said contract."  (*Id.* 3-4.)

Defendants' argument is without merit.  At every stage of the proceedings, the Court rejected Defendants' legal argument that the "stipulated" values in the contract were controlling and could not form the basis of a fraud claim.  The Court's eventual judgment in favor of Sitton Defendants had nothing to do with any "enforcement or interpretation" of the Exchange Agreement.  Rather, the

Court's ruling turned upon the lack of direct or circumstantial evidence pointing to the existence of a fraudulent scheme between Cohen and the Sitton Defendants to defraud Huffman. In these circumstances, ¶ 15.11 is not implicated because the Jones Firm did not succeed on a claim to "enforce or interpret" the Exchange Agreement. Instead, it successfully defended a fraud claim by showing a lack of fraudulent intent.[3]

## III.   CBR's Motion for Attorney Fees

Huffman alleged that CBR was the successor in interest to Gordona Duca and sought to hold CBR liable for all claims asserted against Gordona Duca based on this theory. In addition, Huffman sought to hold CBR liable as a principal based on a "continuing fraud" theory, *i.e.*, that CBR was liable for actions by Cohen during times in which CBR employed Cohen. CBR moved for judgment as a matter of law as to both theories, which the Court granted. Specifically, as to CBR's successor in interest liability, the Court ruled that Huffman presented no evidence that CBR's purchase of Gordona Duca's assets implicated any of the four exceptions to the general rule of non-liability for successor corporations. *See Pulis v. U.S. Elec. Tool Co.*, 561 P.2d 68, 69 (Okla. 1977). As to CBR's principal liability based on the "continuing fraud" theory, the Court ruled that Huffman did not present evidence of any new and distinct injury arising during the six-month time frame governed by listing agreements to which CBR was a party. *See In re Casini*, 307 B.R. 800, 814 (Bankr. D.N.J. 2004) (refusing to apply "continuous tort doctrine" where alleged exposure to

---

[3] Sitton Defendants' cited cases are distinguishable because they all involved contractual attorney fee provisions containing "arising out of" language. *See, e.g., Caufield v. Cantele*, 837 So. 2d 371, 379 (Fla. 2002). The "enforce or interpret" language used in the Exchange Agreement is considerably more narrow, and such language does not extend to defending a claim for fraud that is somehow related to the relevant contract.

fraudulent activities was not "creating new injuries or damages" and because the plaintiff was "not experiencing separate injuries by each new company the defendant set up"); *cf. In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59-60 (2d Cir. 1998) (in RICO context) ("Thus, we find that their later communications which put a gloss on the losing investments were continuing efforts to conceal the initial fraud, and not separate and distinct fraudulent acts resulting in new and independent injuries.").

CBR now moves for attorney fees in the total amount of $33,781.00 on two grounds: (1) ¶ 15.11 of the Exchange Agreement; and (2) the Court's inherent power to award fees in cases involving bad-faith litigation conduct.

A.       ¶ 15.11

CBR argues that it is entitled to attorney fees because "[t]he main issue in the case" was the interpretation of the provision in the Exchange Agreement stating that Cohen and Gordona Duca were transaction brokers. (CBR's Mot. for Atty. Fees 2.) CBR's argument is wholly without merit. First, CBR is not a party to the Exchange Agreement and has no entitlement to fees under such agreement. Second, Taylor was not, under any stretch of logic, employed to "enforce or interpret" the Exchange Agreement, as contemplated by ¶ 15.11. Taylor was employed to defend against claims of CBR's successor liability for actions committed by Gordona Duca and claims of continuing fraud committed while Cohen was employed by CBR. As explained above, the Court's Rule 50 rulings in favor of CBR had nothing to do with enforcement or interpretation of the Exchange Agreement.

B.    Bad Faith Exception

The majority of CBR's motion for fees is devoted to the Court's "inherent power" to award fees in cases "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997) (internal quotation marks omitted).  Fees awarded under the bad-faith exception are punitive and "are designed to punish the abuse of judicial process."  *Id.* at 765-66.  CBR argues that it "was required to defend itself in two years of litigation and participate in a five day jury trial when the Plaintiff knew all along he had not one iota of factual evidence to support his claim and had no intentions of presenting any evidence to support his claim at trial in his case-in-chief."  (CBR's Mot. for Atty. Fees 6.)

The Court declines to exercise its discretion to award fees to CBR.  First, CBR did not make any attempt to defend the claims against it prior to trial.  Despite being properly served with process at the outset of the litigation, CBR failed to file an answer or to file any dispositive motions in accordance with the Court's deadlines.  Apparently, CBR failed to do so because it "anticipated a voluntary dismissal by Plaintiff."  (*See* CBR's Agreed Mot. to File Answer Out of Time 1.)  CBR finally filed its answer on March 17, 2009, well after the discovery and dispositive motion deadlines and a mere month before the scheduled April 2009 trial.  The Court is not sympathetic to CBR's being "forced" to participate in a jury trial when it elected not to file any pre-trial dispositive motions.  Second, the Court finds that neither Huffman or his counsel engaged in any bad faith, vexatious, wanton, or oppressive conduct in prosecuting claims against CBR.

7

CBR's motion for attorney fees (Doc. 128) and Sitton Defendants' motion for attorney fees (Doc. 123) are DENIED.

**ORDERED THIS 24th day of November, 2009.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

8